No. 2932.

DAVE KITCHEN *v.* THE STATE.

1. PERJURY—INDICTMENT.—If it specifically charges the materiality of the matter assigned for perjury, such allegation, in an indictment for perjury, is sufficient in this respect, notwithstanding it does not literally follow the approved form. See the statement of the case for the charging part of an indictment for perjury which, substantially conforming to number 122 of Willson's Criminal Forms, is *held* sufficient.

2. SAME—EVIDENCE.—The indictment charges that the perjury was committed upon the trial of M. and J., for the murder of J. J. The State introduced in evidence a separate judgment rendered against J., to which the defense objected upon the ground that it did not appear from that judgment that M. and J. were jointly tried, but that J. was tried alone. As matter of fact, M. and J. were jointly placed upon trial, and when the State closed its evidence the court directed the acquittal of J. and the trial of M. was proceeded with, the consequence being the return of two verdicts and the rendition of two judgments in the case. The statement of defendant, assigned as perjury, was made during the progress of the joint trial. *Held*, that the judgment against J. was properly admitted in evidence.

3. SAME—PRACTICE.—There is no provision of law which requires that the record, even in a murder case, shall show that the trial court ordered the acquittal of an accused on trial, and that such order can not be shown by parol; and no such doctrine can be held to apply to a perjury case.

4. SAME—CHARGE OF THE COURT.—It was not essential that the trial court should have charged the jury in this case that the statement assigned as perjury must relate to a past or present event; inasmuch as the indictment itself shows that the statement did relate to a past event.

5. SAME.—On a trial for perjury, the trial court instructed the jury, in effect, to acquit the defendant if they had a reasonable doubt whether the statement made by him, and assigned as perjury, was true or false. *Held*, that, as the error was in the defendant's favor, he can not be heard to complain.

6. SAME—EVIDENCE.—The State introduced in evidence, over objection of the defendant, an indictment charging him with the murder of J. J. —the offense involved in the trial upon which the perjury is alleged to have been committed—and adduced oral proof that M., one of the defendants in the said trial, was a witness against him. *Held*, that the evidence was competent to show motive.

7. SAME—CHARGE OF THE COURT.—The record of the proceedings upon the trial in which the perjury was alleged to have been committed,

was properly admitted in evidence as matter of inducement, and to support the allegation in the indictment, that the perjury was committed upon the said trial. But it devolved upon the trial court to so limit the purpose of said evidence in its charge, and to instruct the jury that the record could not be considered upon the issue of perjury.

APPEAL from the District Court of Victoria. Tried below before the Hon. H. C. Pleasants.

A term of five years in the penitentiary was assessed against the appellant upon his conviction under an indictment, the charging part of which reads as follows: "That Dave Kitchen, on the twenty-third day of November, A. D. 1887, in the county and State aforesaid, in the district court for said county, then in session, and of which said court H. Clay Pleasants was then and there the legally qualified judge, there was pending a certain criminal judicial proceeding, wherein the State of Texas was the plaintiff and Berry Milligan and Elmira Jones were the defendants, wherein the said Berry Milligan and Elmira Jones were duly and legally charged by indictment with having, on the fifth day of October, A. D. 1886, in the county and State aforesaid, did with malice aforethought kill and murder one Jesse Jones, by then and there shooting him with a gun, against the peace and dignity of the State, and of which said judicial proceeding the said court then and there had jurisdiction, and wherein issue was then and there duly joined between the said State of Texas and the said Berry Milligan and Elmira Jones, before the said judge, and a jury duly organized to try said issue, and Dave Kitchen did then and there personally appear before said court, and did then and there take his corporal oath, and was duly sworn as a witness in said cause, and oath being then and there duly administered to him by H. A. Neumeyer, the clerk of said court, who was then and there authorized by law to administer the same, and which said oath was required by law and was necessary for the ends of public justice; whereupon it then and there became and was a material inquiry, before said judge and jury in the trial of said judicial proceeding, whether the said Berry Milligan and Elmira Jones, or either of them, did, on the said day and date, and in the county and State aforesaid, with malice aforethought, kill and murder the said Jesse Jones, by then and there shooting him with a gun; and the said Dave Kitchen did then and there, before said judge and jury, upon the trial of said cause, under the sanction of said

oath, administered to him as aforesaid, wilfully and deliberately state and testify that the said Berry Milligan did, about the hour of sun rise, on the morning that the said Jesse Jones was shot and killed, come to the house then and there occupied by one Lucinda McIntyre, in said county of Victoria, where he, the said Dave Kitchen, then and there was—with a gun—and that he,, the said Berry Milligan, did then and there state to him, the said Dave Kitchen, that he, the said Berry Milligan, had a short time previously shot and killed the said Jesse Jones, with the said gun; and which said statement was material to the issue in said cause; whereas in truth and in fact the said Berry Milligan did not, about the hour of sun rise on the day Jesse Jones was shot and killed, go to the house then occupied by Lucinda McIntyre, in said Victoria county, with a gun; and whereas in truth and in fact the said Berry Milligan did not at said time and place, or at any other time or place, state to him, the said Dave Kitchen, that he, the said Berry Milligan, had, a short time previously, or at any time, shot and killed Jesse Jones with a gun or any other fire arm; whereas, in truth and in fact, the said Berry Milligan, about the hour of sun rise, on the morning that Jesse Jones was shot and killed, was at or near the house of one Antone Bishop, in said Victoria county; which said statement so made by the said Dave Kitchen, as aforesaid, was wilfully and deliberately false, and the said Dave Kitchen knew the same to be false when he made it. Against the peace and dignity of the State."

The State first introduced the record of the proceedings upon the trial of Berry Milligan and Elmira Jones, which included the indictment against the said Milligan and Elmira Jones, charging them jointly with the murder of Jesse Jones, and the separate verdicts and judgments of acquittal as to the said Berry Milligan and Elmira Jones.

W. L. Davidson was the first witness placed upon the stand by the State. He testified that he was an attorney at law and defended Berry Milligan and Elmira Jones upon their trial in the district court of Victoria county in November, 1887. The defendant, Dave Kitchen, was duly sworn on the said trial as a witness for the State, and testified, among other things, as follows: "Berry Milligan, about the hour of sun rise on the morning that Jesse Jones was killed, came to the house of Lucinda McIntyre, and told me that he had just shot and killed the old son of a bitch Jesse Jones with this gun, which he had.

That gun was mine, and he left it there and went away,"
Berry Milligan and Elmira Jones were placed upon trial
together, and when the State closed its testimony, there being
no evidence implicating Elmira Jones, the presiding judge
directed the jury to return a verdict of acquittal as to her.
Elmira was then placed upon the stand and testified in behalf
of her co-defendant, Berry Milligan, who was acquitted.

The State, to prove motive, next introduced in evidence in-
dictment number 2392, charging this defendant, Dave Kitchen,
with the murder of Jesse Jones, and the verdict of acquittal
rendered thereon, the indorsement upon said indictment show-
ing Berry Milligan and Elmira Jones to be State witnesses
upon which it was returned.

Antone Bishop testified, for the State, that he remembered
the day that Jesse Jones was killed. At that time Berry Mil-
ligan, who was Jesse Jones's step-son, lived with the said
Jones, whose house was situated about a quarter of a mile
from witness's house. At the time of the killing of Jones,
Berry was working for witness. He came to his work a little
after sun rise on the fatal morning. Witness, who was in his
yard, saw Berry when he reached a point about sixty yards
from his, witness's, house, and about the same time heard the
report of a gun at Jesse Jones's house. Berry went on into
witness's kitchen to get his breakfast. Witness then saw a
negro boy coming towards his fence. After that a fellow
came to the back of witness's field and called Berry, who then
left, and did not return to witness's house on that day. Wit-
ness soon afterward heard of the killing of Jesse Jones, and
went to his house and saw his dead body in the yard. Berry
was present at the inquest upon Jesse's body.

Willie Bishop, the son of the preceding witness, testified, for
the State, that Berry Milligan came to his father's house soon
after sun rise on the day that Jesse Jones was killed, and got
his breakfast. Witness did not hear the shot at Jones's house,
nor did he hear of the killing until some time after it oc-
curred.

S. Hill testified, for the State, that he held the inquest upon
the body of Jesse Jones, being called to do so by Berry Milli-
gan. After hearing the evidence, he put Dave Kitchen under
arrest for the killing. Dave Kitchen testified, on the trial of
Berry Milligan and Elmira Jones, that Berry Milligan came to
Lucinda McIntyre's house before sun rise, and told him that he

had shot and killed Jesse Jones with the gun he then had. Lucinda McIntyre lived in a house about a mile distant from Jesse Jones's house, and in the opposite direction from Antone Bishop's house.

Berry Milligan testified, for the State, that he and his step-father, Jesse Jones, got up on the fatal morning about day light. Jesse made a pot of coffee, which he and witness drank. The witness then went to the house of Mr. Bishop. Just about the time he reached Bishop's house he heard the report of a gun in the direction of Jesse's house. This was a little after sun rise. After exchanging a few words with Mr. Bishop about the work he was to do on that day, the witness went into the kitchen to get his breakfast. From breakfast he went into Mr. Bishop's yard, whence he was called to the field fence by George Jones, a negro boy, and informed that somebody had shot and killed Jesse Jones. Witness then went home and saw the dead body of his step-father lying in the yard. Thence he went to Lucinda McIntyre's house, and asked Dave Kitchen to go to Sam Hosea's and Henry North's and inform them, while he went to notify Justice of the Peace Hill. He took no gun with him to Lucinda McIntyre's, nor did he then, nor at any other time, tell Dave Kitchen nor Lucinda McIntyre that he had killed Jesse Jones.

The State closed.

Lucinda McIntyre testified, for the defense, that she got up about day light on the fatal morning, and made a fire in the yard to cook breakfast. About good sun rise, Berry Milligan came to the house with Dave Kitchen's gun, which the witness had loaned him on the day previous, and told Dave Kitchen, in the hearing of the witness, that he had killed the old son of a bitch with the gun. He left the gun and went off, but came back after a time and asked Dave Kitchen to go and notify Sam Hosea and Henry North, while he went to notify 'Squire Hill.

Sam Hosea, the half-brother of the defendant, testified, in his behalf, that, while defendant was in jail, he went to the Jesse Jones house, Henry North going with him, to see one Sophia Jones, who lived at that house. Berry Milligan told witness and North that Sophia was at a certain other house. He asked what witness wanted with Sophia, and offered to go with witness and North to find her. As witness wanted to learn what Sophia knew about the killing of Jesse Jones, he refused to tell Berry what he wanted with the girl, or to permit him to accom-

pany them.  He and North then went to the house and got the girl.  On their way back to town with the girl, they passed the Jesse Jones house, where Berry joined them.  He rode some distance with the party, and when he left them he said to the girl: "Sophia, remember what you said, and don't go back on me."

Henry North testified sbustantially as did the witness Hosea.

Berry Milligan, for the State, in rebuttal, admitted that he rode a short distance with Hosea, North and Sophia on the occasion referred to by the witnesses Hosea and North, but denied that he told Sophia to remember what she had said and not to go back on him.

*A. S. Thurmond* and *J. L. Hill*, for the appellant.

*W. L. Davidson*, Assistant Attorney General for the State.

HURT, JUDGE.  This conviction is for perjury.  A motion in arrest of judgment was made and overruled, and this is assigned as error.  The indictment is in the form prescribed by Judge Willson in his work on Criminal Forms, page 68, with one exception, which relates to the allegation of materiality of the statement upon which perjury is assigned.  To this there is no objection urged by counsel for appellants, and if there had been objection upon this ground, it would have been untenable, because this indictment alleges that the matter assigned was material, though not in the form prescribed.  This is immaterial to the sufficiency of the indictment.  (Bish. Crim. Proc., sec. 921.)  We have examined and compared Willson's form for perjury committed by a witness before a court in a criminal case, with the authorities, and believe it correct; and therefore the objections urged to the indictment are not well taken.

As the indictment charges that the appellant committed perjury upon the trial of a case wherein Berry Milligan and Elmira Jones were defendants charged with the murder of Jesse Jones, it is contended that the court erred in admitting in evidence the judgment acquitting Elmira Jones.  The contention is that there is a failure to prove that the perjury was committed on the trial of Berry Milligan and Elmira Jones, that the evidence adduced does not show that Milligan and Jones were being tried, but that Elmira Jones was alone upon trial.

The facts are these: Milligan and Jones were placed upon trial jointly. After the State had closed its testimony, the court directed the acquittal of Jones. The trial proceeded as to Milligan, and in consequence two verdicts and judgments were rendered in the case. The statement assigned for perjury was made by appellant when both defendants were on trial. The allegations in the indictment were therefore absolutely true.

But it is contended that the record in the murder case must show that the court ordered the acquittal of Jones, and that this can not be shown by oral testimony. There is no law requiring this matter to be made a part of the record, and, if there was, it would not follow that this matter, on a trial for perjury, could not be proved by parol.

It is objected to the charge that it does not instruct the jury that the false statement must relate to something past or present. Not so in this case, because there can be no possible question relating to this fact; the statement was evidently relating to a past fact. It would be a very remarkable case which would require the court to mention this matter to the jury. Why? Because the indictment must set forth that the accused made a statement, setting out the statement; it must assign perjury upon the statement alleged, and the statement set out and assigned for perjury, and no other, must be proved.

If, therefore, the statement assigned for perjury does not relate to a present or past fact, the indictment will not support a conviction, let the proof be what it may.

Counsel for appellant objects to the following charge: The jury were authorized to acquit the defendant if they had a reasonable doubt whether the statement made by him were true or false. There was certainly no prejudice to appellant in this.

In the motion for new trial it is contended that the verdict was contrary to the instructions of the court in this, the court had directed an acquittal if the jury had a reasonable doubt as to whether the statement by defendant were true or false. This may be true, but evidently the defendant can not complain of this matter, because the error in the charge was clearly against the State. In McNair v. The State, 14 Texas Court of Appeals, 78, it is not intimated that such a charge as that under discussion, relating to reasonable doubt of the guilt or innocence of the accused, will require a reversal either upon the defect in the charge or because the verdict is contrary to the charge.

Over objection, the State introduced in evidence an indict-ment against appellant, charging him with the murder of Jesse Jones, with oral testimony that Berry Milligan was a witness against appellant upon his trial for the murder, counsel for the State explaining that these facts were admissible to show motive for the perjury. In this there was no error.

The record presents serious conflict in the testimony. The State proved by Berry Milligan that he did not make the state-ment to appellant. Milligan was very strongly corroborated by the testimony of Antone Bishop and Willie Bishop, and by cogent circumstances. On the other hand, appellant proved by Lucinda McIntyre that Milligan did make, substantially, the statement to the appellant; and by Hosea and North very suspicious circumstances against Milligan. We have alluded to this conflict in the testimony for the purpose of discussing an omission in the charge of the court. Now, while the record of the trial at which the alleged perjury occurred was admissible as inducement, or for the purpose of showing that the alleged perjury was committed in the trial of the *cause, as alleged in the indictment*, still such record can not be used to prove the perjury.

The judgment acquitting Milligan was introduced by the State. This was proper; but, as the appellant's statement, as-signed for perjury, if believed by the jury, would have con-victed Milligan, or was strongly calculated to induce the jury to convict Milligan, it was the duty of the court below, by proper instructions, to have explained to the jury the object or purpose of its admission. The jury should have been told that the judgment of acquittal could not be considered as proof of the perjury, or of the falsity of the statement assigned for per-jury. (See this subject discussed in Davidson v. The State, 22 Texas Ct. App., 372; see also, Long v. The State, 11 Texas Ct. App., 381; McCall v. The State, Id., 353; Kelly v. The State, 18 Texas Ct. App., 262; Littlefield v. The State, 24 Texas Ct. App., 167; Washington v. The State, 23 Texas Ct. App., 336; Maines v. The State, Id., 568.)

This omission was called to the attention of the court, if not at the time the charge of the court was read (this is left in doubt), on the motion for new trial. For the omission in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered October 13, 1888.