[No. 809. Decided December 22, 1893.]

K. GOTTSTEIN, *Appellant*, v. SEATTLE LUMBER AND COM-
MERCIAL COMPANY *et al.*, *Respondents.*

BUILDING CONTRACT — SURETYSHIP — RESCISSION — INSTRUCTIONS.

When counsel propose a proper charge, if given at all by the
court, it ought to be given to the jury in the form submitted.

In an action to recover damages for failure to perform a con-
tract to furnish materials for, and to build, certain houses, where
the defense is set up by the defendant lumber company that it was
a surety for the other defendant, and that the contract had been re-
scinded, a charge to the jury is erroneous, when it is open to the
construction that, if the lumber company was a surety merely, it
could not escape the obligations of the contract unless there had
been an agreement to abandon and rescind by all parties, as such
an agreement could have been made by plaintiff with the surety in
the absence of his principal.

In such a case, where the court has charged the jury as to pass-
ing upon the question of rescission from all the facts in the case, it
is erroneous to include in the charge language directing the atten-
tion of the jury to what the parties said, and telling them that from
that they were to determine whether the contract was rescinded or
not, as the impression would thereby be produced that the "whole
of the testimony" in the earlier portion of the charge had reference
merely to the conversations, while there might have been an ex-
plicit oral agreement to rescind, but the conduct of the parties
might have shown a clear intention to disregard the oral agree-
ment.

In such a case, where the lumber company, on the face of the
contract, is bound jointly with its co-defendant, and its claim of
suretyship is not conceded by the pleadings or proof on the part of
plaintiff, an instruction that if there was an agreement to rescind
between the plaintiff and the lumber company, which was acted on,
the company was thereby released, is erroneous.

A party having requested the court to charge that the jury must
find certain facts in issue by a preponderance of the evidence, can-
not complain that the court did not require the evidence on those
points to be clear and positive.

An instruction that if, by the acts of plaintiff in agreeing with
the lumber company alone, without its joint obligor, that the con-
tract should be abandoned, the company was led to suppose that

nothing further would be done under it, and relying thereon, refrained from taking any action to save itself from loss, plaintiff would be estopped to deny the rescission, is improper when there is no evidence showing that the lumber company would have taken any different course than it did if nothing had been said about a rescission.

*Appeal from Superior Court, King County.*

*Hughes, Hastings & Stedman,* for appellant.
*Burleigh, Gamble & Burleigh,* for respondents.

The opinion of the court was delivered by

STILES, J.—Appellant brought this action to recover sundry damages for failure to perform a contract to furnish materials for, and to build, certain houses. The answer of the respondent Seattle Lumber and Commercial Company set up, in the first place, that it was a surety only for its co-respondent Earp, and, secondly, that shortly after the execution of the contract, by the mutual agreement of all the parties to it, it was rescinded and given up, the fire of June 6, 1889, at Seattle, having so changed the condition of appellant and the lumber company that they could not go on; and it was also claimed that if appellant had suffered damage in the construction of the houses by Earp, or in his failure to construct them, it was under some contract or employment of which the lumber company had no knowledge.

Upon the trial the respondent lumber company alone appeared (Earp having made default), and it was developed that the claim that a rescission had taken place was based upon two alleged conversations occurring on June 10th, in which appellant was alleged to have suggested and requested that, on account of their common losses in the fire, the whole matter of building the houses be dropped. Appellant denied ever having requested or agreed to any such proposition, and insisted that even if there had been such

an agreement, the effect of it was obviated, and the contract was revived by the conduct of all parties in subsequently proceeding with the erection of the buildings until they were nearly finished.   He testified that so far from having been embarrassed by the fire, he had just previously obtained a loan of nearly enough money to pay for the buildings, and that the money was in bank, and under the terms of the loan could be used only for the purpose of building.   Earp, according to respondent's claim, was to be the builder, and the lumber company was to furnish the lumber and mill work and guarantee his performance of the contract.   It is conceded that in July, Earp proceeded with the building, obtaining his materials where he could, the lumber company having lost its mill, and having gone entirely out of the business in which it was formerly engaged.   The testimony of the two sides does not materially differ as to how the work came to be resumed.   Earp demanded pay from appellant for the value of the work done and materials furnished before the fire; but appellant refused, and said: "You go ahead with the building."   No money was due, under the contract, until the frames of all the houses were up, when a payment of $3,000 was to be made.   The amount demanded by Earp was only a few hundreds.   The contract was not surrendered or changed, nor was any name erased therefrom.   The architect, in making certificates of work done, from time to time, in all cases certified Earp and the lumber company as entitled to payment; and in several instances the lumber company indorsed on the certificates a direction to pay the amount named to Earp.   When the buildings were almost completed it was found that large bills for labor and materials were unpaid, and Earp abandoned his place as manager of the construction, whereupon the manager of the lumber company, the same person who had signed the contract, was called into a conference with appellant and the archi-

tect, and it was claimed that he there proposed, or gave his assent to a proposition, that appellant should proceed, under the terms of the contract, to finish the buildings at the expense of the contractors, if there should be a deficit. None of the testimony showing the amount of the damage was controverted.

The principal errors urged by appellant are as follows:

1. Appellant's seventh request was:

"You are further instructed that the execution of the said contract having been admitted, before you are authorized to find that the same was abandoned and rescinded, you must find from the evidence that the minds of all the parties to the said contract met and consented to such rescission."

This request exactly expressed the law of the case, and if the modifications made by the court by striking out the word "all" and inserting "and alleged rescission" after the second occurrence of the word "contract," made the charge mean anything different from what it did before, it was error to make the changes. We think both forms mean the same thing, and should not reverse the case for any such cause. But when counsel propose a proper charge it ought to be given to the jury in the form submitted, if given at all.

2. In so far as appellant's eighth request was good, it was covered by the seventh, as above quoted. It was bad because it was open to the construction that under it, if the lumber company was a surety merely, it could not "escape the obligations" of the contract unless there had been an agreement to abandon and rescind by all the parties. One of the close points in the case was that Earp was not present at the conversation where the lumber company claimed appellant to have asked that the contract be dropped; but if the lumber company was a surety merely, Earp's absence would have made no difference. Appellant would have had no right to lead a mere surety to suppose the

contract was ended, and afterwards go on with the principal, without notice to the surety and his assent to his continuing bound.

3. The eighth charge given was:

"The court instructs you that the question of rescission, of whether that is a fact or not, must be proven by a preponderance of the evidence, and that the manner or the language of such rescission is immaterial; it is for you to determine, from all the facts in this case, whether that contract was rescinded or not. You have no right to pick out any particular part of the testimony and say that that does or does not prove a rescission. You should take the whole of the testimony and consider it; consider what the parties said; what the evidence shows that they said; you are to determine what they said, and what was said between them, and from that determine whether the contract was rescinded or not. If it was rescinded, that was the end of it as far as the Seattle Lumber and Commercial Company is concerned."

We think the court should have ended this charge with the words: "You should take the whole of the testimony and consider it." That part of it which directed the attention of the jury to what the parties said, and told them that from that they were to determine whether the contract was rescinded or not, was inaccurate and misleading, and could scarcely help producing the impression that what the court meant in the earlier portion of the charge by the "whole of the testimony," or "facts," was merely the conversations.

The last clause was not a correct statement. The contract might have been an explicit oral agreement to rescind, and yet the rescission might never have been acted upon, and the conduct of the parties may have shown a clear intention to disregard the oral agreement.

4. Another charge was:

"The court further instructs you, gentlemen, that if you find that, by agreement between the plaintiff and the Se-

attle Lumber and Commercial Company that it was agreed that this contract for the building of these houses should be rescinded, and need not go ahead, and that as a matter of fact it was rescinded, the contract was rescinded and acted upon, then the court instructs you that any subsequent acts of the company by its president in signing any papers by which Earp, the other contractor, got his pay for work that he may have done under the contract would not bind the company, because if the contract was rescinded and ended, it was ended for all purposes so far as that company was concerned.''

This charge could not have been the law of the case unless the lumber company had been conceded to be a surety only, which was very far from being the fact. Respondent insists that the instruction is based upon the supposition of a finding that the contract had in fact been legally rescinded, and the rescission acted upon, but it is impossible to so view it. The premises are an agreement between appellant and the lumber company without regard to Earp, and that agreement acted upon. The bond was a joint obligation, upon its face, and appellant could not be bound by an agreement with one of the obligors to rescind, unless he was a surety merely.

In this connection appellant complains that no instructions were given proper for the guidance of the jury in determining whether the agreement to rescind, if made, was executed to any extent, and whether there was a renewal of the contract by conduct. But it is enough to say that no instructions of this kind were requested.

5. Appellant having in his requests asked the court to charge that the jury must find the suretyship and the rescission by a preponderance of the evidence, cannot complain that the court did not require the evidence on those points to be clear and positive.

6. Certain instructions were given to the effect that if, by the acts of appellant, in agreeing with the lumber com-

pany alone, without Earp, that the contract should be abandoned, it was led to suppose that nothing further would be done under it, and relying thereon, it was induced to refrain from taking any action to save itself from loss, appellant would be estopped from denying that there had been a rescission. In our judgment all instructions to this effect were improperly given, as there was no evidence in the case to require or justify them. The evidence fully covered the point that the lumber company did not, itself, do anything in the way of complying with its contract (supposing it to have been a principal) after the fire, but there was nothing to show that it would have acted in any different manner if nothing had ever been said about a rescission. It went out of and abandoned the mill business, and Earp took appellant's money and bought materials elsewhere, which, for all that appears, is all that it could have done. There was no attempt to show that if it had actively participated in the management of the business or work in connection with the building, the result would have been in any way different, or that any other diligence in its behalf would have put it into a better situation.

7. The question addressed to the witness Dobson, as to whom the lumber company looked for payment for the materials it furnished, was incompetent. Appellant's rights under the contract could not be affected by considerations of that kind.

8. The failure of the jury to find a verdict against Earp was a flagrant disregard of the charge of the court. We are not prepared to say what the practice ought to be where one of several defendants in a case like this makes default. All that such a defendant is entitled to is that there shall be a submission of the question of the amount of damages to a jury, and the failure of the jury to find according to the undisputed testimony ought to cause the court to set the verdict aside forthwith. Whether, in the

absence of error as to the other defendants, the whole verdict should be set aside and a new trial granted as to all, we do not now decide.

Other errors assigned were immaterial; but for those mentioned, except the first, the judgment is reversed, and a new trial granted.

HOYT and ANDERS, JJ., concur.

DUNBAR, C. J., and SCOTT, J., dissent.