[No. 4249.    Decided January 28, 1903.]

THE STATE OF WASHINGTON, *Respondent,* v. MANUEL DOUETTE, *Appellant.*

PERJURY — SUFFICIENCY OF INFORMATION — ALLEGATION OF JURISDICTION.

Under Bal. Code, § 6857, which provides that it is sufficient in an information for perjury to set forth the substance of the controversy in respect to which the crime was committed, and in what court or before whom the oath alleged to be false was taken and that the court or person before whom it was taken had power to administer it, and under art. 4, § 6, of the constitution, which vests the superior court with original jurisdiction in cases amounting to felony, the failure of the information to specially allege that the court had jurisdiction of the cause of action in which the alleged perjury was committed would not render the information bad, where sufficient was alleged to show it was a case of felony on trial in the superior court, thereby raising a *prima facie* presumption of jurisdiction.

SAME — MATERIALITY OF FALSE TESTIMONY.

Where an information charging perjury alleges that defendant was duly sworn as a witness, and, being so sworn, "it then and there, upon the trial of said issue, became and was a material inquiry," etc., and that defendant feloniously, falsely, and contrary to such oath, deposed and swore falsely to such material facts, it sufficiently avers the materiality of the testimony and that defendant testified falsely thereto after he was sworn.

SAME — INSTRUCTIONS — DUTY OF JURY TO DISREGARD VERDICT IN OTHER CAUSE.

The failure of the court in a perjury case to charge the jury not to consider as any evidence of the guilt of defendant the verdict and judgment included in the record of the cause in which the alleged false testimony had been given, and which

record had been admitted in evidence in the perjury case as matter of inducement, could not be urged as error, where defendant had not requested specific instructions upon that feature of the case.

SAME — HARMLESS ERROR.

The action of the court in submitting the question of the materiality of alleged false testimony to the jury, instead of charging that it was material, was not prejudicial, where the jury by their verdict found, in effect, that the testimony was material.

SAME — ELEMENTS OF CRIME.

The failure of the court, in charging the jury, to define the crime of perjury in the statutory language was not prejudicial, where the court instructed them as to what it was necessary to find beyond a reasonable doubt in order to convict defendant, and, in so doing, pointed out all the essential elements of the crime.

SAME — WITNESSES — REFRESHING MEMORY BY REFERENCE TO RECORD.

A hotel keeper is competent to testify as to the presence of a guest in his hotel on a certain date, after refreshing his memory by reference to his register, when it appears that the entries therein were made by him in the usual way in the regular course of business and in accordance with the facts existing at the time.

SAME — EVIDENCE — RECORD IN FORMER CASE — OBJECTIONS TO RELEVANCY.

A general objection to the competency and relevancy of the testimony given in another case and offered in evidence, will not permit appellant to urge the incompetency and irrelevancy of specific portions thereof, where the testimony, as a whole, was competent, material and relevant.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM H. SNELL, Judge. Affirmed.

*James F. O'Brien,* for appellant.

*Fremont Campbell,* Prosecuting Attorney, *Charles O. Bates* and *Walter M. Harvey,* for the State.

The opinion of the court was delivered by

ANDERS, J.—The appellant was charged by an information filed by the prosecuting attorney in the superior court

in and for Pierce county with the crime of perjury, alleged to have been committed on the trial in said court of one A. P. Vance for murder in the first degree, in the month of October, 1901. A warrant was issued upon the information, and thereafter the appellant was arrested and arraigned in open court, and thereupon a motion to set aside the information and a demurrer to the information were interposed by appellant. The motion was denied, and the demurrer overruled, and exception noted, after which a plea of not guilty was entered. When the cause came on for trial by jury, the appellant interposed a challenge to the panel upon the grounds: (1) That the jurors drawn to try the case had not been properly selected by the jury commissioners, and (2) that the law of 1901, providing for the selection of jurors, was unconstitutional and void. This challenge was denied by the court, and a trial was then had, resulting in a verdict of guilty. A motion in arrest of judgment, and also a motion for a new trial, were filed, and submitted to the court, and both were denied, and thereafter appellant was sentenced to the state penitentiary for a term of ten years. To review this judgment and sentence he has brought the case here on appeal.

It is alleged that the trial court erred: (1) In denying appellant's motion to quash the information; (2) in overruling his demurrer to the information; and (3) in overruling his objection to the introduction of any testimony in this case. As each of these assignments of error is based on the assumption that the information is insufficient in law, they may properly be considered together; or, in other words, as one assignment.

It is earnestly contended by the learned counsel for appellant that the information is insufficient, for the reason that it does not aver that the crime of murder, for which Vance was tried, was committed in Pierce county,

or within the jurisdiction of the superior court of Pierce county; and it is argued that, in the absence of such averments, it does not appear that the court had jurisdiction of the case of State v. Vance, in which the alleged perjury was committed. The information upon which the appellant was tried, among other things, states:

"That heretofore, to-wit, on the 21st day of October, A. D. 1901, in the superior court of the state of Washington, in and for Pierce county, held at Tacoma on said day, before William H. Snell, presiding judge of said court, a certain issue in due form and manner joined in said court between the state of Washington, aforesaid, and one A. P. Vance, upon a certain information then pending in said court against the said A. P. Vance for murder in the first degree, came on to be tried, and was, then and there, in due form of law, tried by a certain jury of the county, in due manner returned, impaneled, and sworn for that purpose, and that, at and upon the trial of said issue, Manuel Douette, of Pierce county, Washington, did then and there appear and was produced as a witness for and on behalf of the said defendant A. P. Vance, upon the trial of the said issue, and the said Manuel Douette was then and there duly sworn, as such witness as aforesaid, before Samuel Walker, who was then and there deputy clerk of the said superior court, that the evidence which he should give to the court and jury between the said state of Washington and the said A. P. Vance, the defendant, on the issue then pending, should be the truth, the whole truth and nothing but the truth, the said Samuel Walker, as such deputy clerk aforesaid, then and there having sufficient and competent power and authority to administer the said oath to the said Manual Douette in that behalf, and the said Manuel Douette being so sworn as aforesaid, it then and there, upon the trial of the said issue, became and was a material inquiry whether the said witness, Manuel Douette, was at Eatonville, in Pierce county, state of Washington, on Monday, the second day of September, A. D. 1901, between the hours of 1 o'clock and 3 o'clock in the afternoon of said

day, and saw the defendant A. P. Vance and Charles F. Franklin, then and there fighting, and during said time then and there saw defendant, A. P. Vance, fire two shots from a revolver in his right hand, and whether the said witness, Manuel Douette, then and there also saw Charles Williams while the said defendant A. P. Vance and said Franklin were then and there fighting as aforesaid, come out and take out of his, the said Williams', left hand pocket a revolver and start towards the said Vance and Franklin and then and there rush upon the said Vance and Franklin with a gun in his, the said Williams', right hand, as though he, the said Williams, was going to strike the said Vance and Franklin, and whether the said witness, Manuel Douette, then and there also saw the said Williams bring the said revolver in his right hand down as if to strike the said Vance and Franklin with the said revolver, and whether said witness, Manual Douette, then and there, at the time he, the said witness, says he saw the said Williams bring the said revolver down, he, the said witness, then and there heard a shot and saw the said Vance, Franklin and Williams all go down at one time; and the said witness, Manuel Douette, did then and there, upon his oath so taken as aforesaid in the said cause, feloniously, wilfully, falsely, corruptly, knowingly and contrary to such oath, depose and swear, amongst other things, in substance and to the effect following, that is to say, that he, the said witness, Manuel Douette, was at Eatonville, Pierce county, state of Washington, on Monday, the second day of September, A. D. 1901, between the hours of one and three o'clock in the afternoon of said day, and that he then and there saw two men (meaning Vance and Franklin) scuffling or wrestling, and that he first thought they were skylarking on the porch of a store, and that one of the said men seemed to be pushing the other man off of the porch, and that while he, the witness Manuel Douette, was so watching the said two men, he saw a man (meaning Charles Williams) come out as if he came out of the store, and that just as the man came out it seemed like he took out a revolver from his left hand side and started towards the fellows who were skylarking

on the porch (meaning Vance and Franklin), and just at
that time he saw the men who were skylarking (meaning
Vance and Franklin) fire two shots; that he, the said
witness, Manuel Douette, also then and there saw that it
was the man on the opposite side of him (meaning Vance)
who fired the said two shots from his right hand, and that
he, the said witness, Manual Douette, then and there saw
the man who came out and took the revolver from his left
hand pocket (meaning Charles Williams) rush on the two
men (meaning Vance and Franklin) with a gun in his
right hand as if he was going to strike them (meaning
Vance and Williams), and that the said man (meaning
Charles Williams) brought it down (meaning the gun) as
if he was going to strike them (meaning Vance and
Franklin), and that as his hand was going down (mean-
ing the hand of Williams) he, the said witness Manuel
Douette heard a shot, and that just at that moment he saw
them all (meaning Vance, Franklin and Williams) go
down at one time.    Whereas, in truth and in fact, the
said witness Manuel Douette was not at Eatonville, Pierce
county, state of Washington, on Monday, the second day
of September, A. D. 1901, between the hours of one and
three o'clock in the afternoon of said day, and the said
witness, Manuel Douette, did not then and there see two
men (meaning Vance and Franklin) or any other men
scuffling or wrestling on the porch of a store or at all,
or see one of said men seeming to push the other man
off the porch, and the said witness, Manuel Douette, did
not then and there, or at all, see a man come out as if he
came out of the store and take a revolver out of his left
hand pocket or out of any pocket, and start towards the
two men (meaning Vance and Franklin), and the said
witness, Manuel Douette, did not then and there see the
two men (meaning Vance and Franklin) or either of them
fire two shots, and the said witness, Manuel Douette, did
not then and there or at all see a man who seemed to come
out of the store (meaning Williams) and with a gun in
his right hand rush on the two men (meaning Vance and
Franklin) and bring the revolver down as though he was
going to strike the two men (meaning Vance and Frank-

lin), and the said witness, Manuel Douette, did not then and there at that moment, or at all, hear a shot or see the three men (meaning Vance, Franklin and Williams) go down at one time, or at all. And so the said F. Campbell, prosecuting attorney aforesaid, says that the said witness, Manuel Douette, feloniously, wilfully, falsely, corruptly, knowingly and to such oath as aforesaid, in manner and form aforesaid, did then and there commit the crime of perjury, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Washington."

It may be admitted that, under the technical rules of pleading at common law, this information would be defective and insufficient. But the common-law forms of pleading have been changed and simplified by statute in this state, and it is not necessary here to specifically allege that the court had jurisdiction of the cause of action in which the alleged perjury was committed. *Commonwealth v. Knight,* 12 Mass. 274 (7 Am. Dec. 72) ; *State v. Newton,* 1 G. Greene, 160 (48 Am. Dec. 367).

"A direct allegation of authority to administer the oath is sufficient to show the jurisdiction of the court or officer." 16 Enc. Pl. & Pr., 326.

It is provided in § 6857 of Bal. Code that:

"In an indictment or information for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the crime was committed, and in what court or before whom the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment or information need not set forth the pleadings, record or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed."

It is apparent that under the provisions of this section ·

of the statute it is sufficient, so far as the question of juris-
diction is concerned, to set forth in the information in
what court or before whom the alleged false oath was
taken, and that the court or person before whom it was
taken had authority to administer it. And an examination
of this information will disclose that it contains all the
averments necessary under the statute. It alleges, in sub-
stance, that upon the trial by a jury of the case of State
v. Vance for murder in the first degree, in the superior
court of Pierce county, the appellant was then and there
duly sworn as a witness by Samuel Walker, who was then
and there deputy clerk of said court, and had competent
and sufficient power and authority to administer said oath
in that behalf. The information does not expressly allege
that the superior court of Pierce county had jurisdiction
of the case in which the alleged perjury was committed,
but that the court had in fact jurisdiction of the *Vance
Case* is, we think, necessarily implied from the averments
that it was a case of felony, and was tried in that court.
Our superior courts are vested by the constitution with
jurisdiction "in all criminal cases amounting to felony, and
in all cases of misdemeanor not otherwise provided for by
law." Constitution, art. 4, § 6. The averment in the
information that the oath alleged to be false was taken
in a certain superior court shows *prima facie* that the court
had jurisdiction of the proceedings in which the oath was
administered. The question here under consideration was
presented to and determined by the supreme court of
Colorado, in *Thompson v. People*, 26 Colo. 496 (59 Pac.
52), under a statute similar in substance to ours. And in
that case the court, after quoting the statute, said:

"It will be observed that by the provisions of this section
it is sufficient to aver in the information that the court
or authority before which the oath was taken had full

power to administer the same. This section is substantially the same as the statute 23, George II., Chap. 11. Under that statute the English decisions are that it is only necessary to state the substance of the offense, the name of the court, and aver the court's authority to administer the oath. To the same effect are the decisions in this country, under similar statutes. . . . While it is true that the information does not contain an express averment that the district court of El Paso county had jurisdiction of the case in which the alleged false testimony was given, it does aver that upon the trial of a certain criminal case, of which that court *prima facie* had cognizance, the plaintiff in error was duly sworn as a witness by the deputy clerk, and that he had sufficient authority to administer the oath. We think, therefore, that in this particular the information not only conforms to the requirements of the statute, but by necessary implication states that the proceeding in which the oath was administered was one over which the district court had jurisdiction. Nor is the information defective because of the failure to set forth how or in what way the evidence alleged to be false was material to the issue. It is well settled that it is sufficient if its materiality appears either from the facts alleged, or by direct averment."

The objection that it does not appear from any averment in the information that the superior court of Pierce county had jurisdiction of the case of State *v*. Vance is not tenable, and the court below committed no error either in denying the motion to set aside the information or in overruling the demurrer to the information interposed by the appellant.

It is next objected that it does not appear by any allegation in the information that the matter alleged to be material was material at the time the defendant, Manuel Douette, was called to testify as a witness. As we have seen, the information alleges that "the said Manuel Douette was then and there duly sworn as such witness as

.aforesaid, . . . and, the said Manuel Douette being sworn as aforesaid, it then and there, upon the trial of said issue, became and was a material inquiry," etc. And it is insisted, in effect, by counsel, that, for aught that appears from the above averment, the testimony of the appellant may have become material, if at all, after he had testified and left the witness stand. In support of the proposition that the materiality of the alleged false testimony does not sufficiently appear from the averments in the information, appellant cites and relies on the case of *People v. Collier,* 48 Am. Dec. 699. In the opinion of the court in that case it is stated that the indictment alleged, in substance, that a complaint was made against one Allen Boyce, charging him with having stolen a bay horse and a mule, the property of one Benjamin F. Collier, the defendant; that the matter came on to be heard and determined and that the defendant was, in due form of law, sworn as a witness. The only allegation in the indictment as to the materiality of the testimony given by the defendant was as follows: "And then and there, upon the hearing of said complaint, it became and was material to ascertain the truth of the matter hereinafter alleged to have been sworn to and stated by the said Benjamin L. Collier, upon his oath." And the court very properly held in that case that the indictment failed to show that the evidence given by the witness was material to the matter there in issue at the time the evidence was given, or that the defendant gave any evidence after it became material. While the doctrine announced in that case is undoubtedly correct, it would seem to be inapplicable to the case at bar, for the reason that it is here alleged, in effect, that the testimony was material to the issue then pending in court, and that the defendant (appellant) testified falsely after he was sworn. We think the materiality of the testimony

was sufficiently alleged.  Of course, the immediate issue·
in the case in which it is alleged the appellant testified
falsely was whether Vance was guilty of murder in the·
first degree.  Witnesses were sworn on behalf of the state,
who testified that they saw Vance kill one Charles Frank--
lin by shooting him with a revolver at Eatonville, in Pierce·
county, Washington, on September 2, 1901, and that no·
other person discharged or had a revolver or pistol on that
occasion.  And testimony to the same effect was properly
given on the trial of this case, under the averments in the·
information, for the purpose of showing how the testimony
given by appellant became and was material upon the trial
of the case of State against Vance.  While the materiality
of the testimony alleged to be false must be shown in the·
indictment or information, either by direct averment or
by stating facts which render the materiality of the tes-
timony apparent (16 Enc. Pl. & Pr., 343-344) it is not
necessary, to constitute perjury, that the witness should
swear falsely and corruptly to the immediate fact in issue,
for perjury may be committed by falsely and corruptly
swearing to any fact or circumstance which legitimately
tends to prove or disprove such fact, or which has the·
effect to strengthen or corroborate the testimony upon the
main fact.  *Dilcher v. State,* 39 Ohio St. 130; *Thompson
v. People, supra.*  It can hardly be disputed that the testi-
mony alleged to have been given by appellant upon the·
trial of the Vance case tended to disprove the fact immedi-
ately in issue, namely, whether or not Vance was guilty
of the crime with which he was charged.  Under the·
authorities above cited, the alleged testimony was certainly
material.

At the trial of this case the court admitted in evidence·
the trial record of the case of State *v.* Vance, including
the verdict and judgment.  It is conceded by counsel for

appellant that it was proper and necessary to show by the record that an information was filed, and that a plea of not guilty was entered; that the trial proceeded after the jury was impaneled, and that witnesses were sworn. But he earnestly insists that the court erred in admitting the verdict in evidence, and especially, after having admitted it, in failing to instruct the jury that they should not consider it as any evidence of the guilt of the defendant. The cases cited by appellant in support of the contention under consideration do not hold that, in prosecutions for perjury, it is improper to receive in evidence the record of the trial in which the perjury is alleged to have been committed. On the contrary, they announce the doctrine that such record is admissible in evidence as inducement, or, in other words, for the purpose of showing that the alleged perjury was committed on the trial of the cause alleged in the indictment or information; but that it is the duty of the court to tell the jury that the judgment cannot be considered as proof of the perjury, or the falsity of the statement assigned for perjury, and that for a failure to so instruct the jury the judgment will be reversed. *Kitchen v. State*, 26 Tex. App. 165 (9 S. W. 461). See, also, *Davidson v. State*, 22 Tex. App. 372 (3 S. W. 662), and *Hutcherson v. State*, 33 Tex. Cr. 67 (24 S. W. 908). These are Texas cases, and the decisions therein were fully warranted by a statute of that state which provides that in cases of felony the judge must charge the jury, and must "distinctly set forth the law applicable to the case, whether asked or not." See Thompson, Trials, § 2340, and note.

But the learned counsel for the state contend that the rule announced in those cases as to the duty of the court in charging the jury is not in harmony with that generally adopted by the courts in this country, or with the previous decisions of this court. And we think this contention is

amply supported by authority. The court was not requested to charge the jury not to consider the verdict in the Vance case as evidence against the appellant, and, that being so, the mere failure of the court to so charge affords no sufficient reason for reversing the judgment. The general rule as to specific instructions is stated in § 2341 of Thompson on Trials, as follows:

"It is, then, a general rule of procedure, subject, in this country, to a few statutory innovations, that mere *non-direction*, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. A party cannot, by merely excepting to a charge, make it the foundation for an assignment of error, that it is indefinite or incomplete. The rule rests upon the soundest foundation. The facts of the case come to the mind of the judge as matters of first impression, and it will often be extremely difficult for him, in the short time allowed for a trial before a jury, and in the midst of such a trial, to prepare a series of instructions applicable to all the hypotheses presented by the evidence. On the other hand, counsel are presumed to have studied their case beforehand; to come to the court with a fair understanding of the facts which will probably be proven, and with a full knowledge of the law applicable to these facts. It is, therefore, their duty to give attention to the charge of the judge, and if, in their opinion, he omits to give direction as to the law applicable to any essential feature of the evidence, to call his attention to the omission and to request appropriate supplementary instructions; and when they fail thus to call his attention to something which he may fairly be supposed to have omitted from inadvertence, they ought not to be allowed to complain of the omission in an appellate court. A rule which would allow them to do so would be extremely inconvenient. It would multiply new trials and reversals, and often on grounds which have no connection whatever with the merits."

Our statute provides generally that in charging the

jury the court shall state to them all matters of law neces-
sary for the information of the jury in finding a ver-
dict. (Bal. Code, § 4993; 2 Hill's Code, § 354.) And
this court has held, under that statute, that, if counsel
desires specific instructions upon a particular feature of
the case as presented by the evidence, he should submit
a request therefor at the proper time. *Wilson v. Waldron,*
12 Wash. 149 (40 Pac. 740).

We have also repeatedly held that, if an instruction
is too general in its terms, it is the duty of counsel to ask
the court to make it more specific, instead of merely
objecting to it. See *Cogswell v. West St., etc., Ry. Co.,* 5
Wash. 46 (31 Pac. 411); *Enoch v. Spokane Falls & N.
Ry. Co.,* 6 Wash. 393 (33 Pac. 966); *Duggan v. Pacific
Boom Co.,* 6 Wash. 596 (34 Pac. 157, 36 Am. St. Rep.
182); *Brown v. Porter,* 7 Wash. 327 (34 Pac. 1105);
*Gottstein v. Seattle Lumber, etc., Co.,* 7 Wash. 424 (35
Pac. 133). And, when not controlled by a mandatory
statute, such as that involved in *State v. Myers,* 8 Wash.
177 (35 Pac. 580), this court has uniformly ruled, in
effect, that an appellant cannot avail himself of incom-
plete instructions, unless he has first requested the court
to make its instructions more full and complete, and it
has refused to do so. *Box v. Kelso,* 5 Wash. 360 (31 Pac.
973); *McQuillan v. Seattle,* 13 Wash. 600 (43 Pac.
893).

The appellant, in the court below, challenged the panel
of jurors from which the jury was drawn to try this case,
on the ground that the jury was not properly selected,
and more especially on the ground that the law of 1901
regulating the selection of jurors was unconstitutional and
void. The court denied the challenge, and this ruling of
the court is assigned as error. The identical questions
here raised and discussed by counsel were presented to this

court, and upon careful consideration were determined adversely to the contention of appellant, in the late case of *State v. Vance*, 29 Wash. 435 (70 Pac. 34); and we do not deem it necessary to repeat what was there said upon the subject.

It is clearly shown by the evidence in this case that some time after the middle of August, 1901, the appellant was employed by one Herman Klaber to go into the country north of Seattle, embracing British Columbia as well as the northern part of this state contiguous to Puget Sound, and hire Indians to work in Mr. Klaber's hop yards at Puyallup, and that in pursuance of such employment he at once left Tacoma for the purpose above stated. On August 24, 1901, the appellant entered his name in the register of the Commercial Hotel at Steveston, B. C., of which one Rudolf Wolff was manager, and on August 30th he addressed a letter, dated at Steveston, to Mr. Klaber at Tacoma, stating that he had succeeded in getting over five hundred hop pickers; that some of them had already left there, and were coming in canoes; that others would leave the day the letter was written and the day after, and that many of them would come by steamer; that he would be with them until they started, and asking Mr. Klaber to look after them when they arrived at Tacoma. This letter was received by Klaber at Tacoma on September 2, 1901. On September 4, 1901, appellant sent a telegram to Klaber from Seattle, stating that he would arrive at Tacoma by steamer at twelve o'clock with forty pickers. And some time after twelve o'clock on said day appellant met Mr. Klaber at Tacoma, and requested the latter to prepare and send, in appellant's name, a telegram to a Cowegan Indian at Anacortes, the appellant saying at the time that he had just returned from down the Sound, or words to that effect. The register of the Commercial Hotel was pro-

duced in court by Mr. Wolff, who was sworn as a witness for the prosecution, and identified by him. This witness testified that appellant himself registered his name in the hotel register on August 24, 1901, and the signature of the appellant, together with the date, and the number of the room he occupied in the hotel, was offered by the prosecution and received in evidence. A similar entry in the register, under date of August 29, 1901, made by the witness in the presence of appellant, was also offered and received in evidence. The other entries of appellant's name upon the register under dates of August 30th and 31st and September 1st, 1901, were not admitted in evidence by the court for the reason that they were made by the witness Wolff when the appellant was not personally present. This witness testified that he placed appellant's name on the register at the times therein specified, and would not have done so if appellant had not then been a guest at his hotel, but that he had no recollection of his being there on August 30th and 31st and September 1st, independent of the register, to which he was permitted to refer. After examining the book, the witness testified that appellant stayed at said hotel in Steveston on the days specified in the register. The appellant claims that the court erred in admitting this testimony over his objection, but we perceive no error in the ruling of the court in that regard. The entries made by the witness showing the appellant occupied room 4 of the Commercial Hotel on August 30th and 31st and the night of September 1, 1901, were shown by him to have been made in the usual way in the regular course of business, and in accordance with the facts existing at the time. The evidence, we think, was clearly admissible. Stephen, Evidence (Chase's 2d ed.), p. 91. See, also, 1 Greenleaf, Evidence (16th ed.), § 439 b; Jones, Evidence, § 884.

It is next contended that the court erred in permitting all of the testimony of appellant in the case of State v. Vance to be given to the jury in this case. This testimony was identified by the stenographer who reported the evidence in the Vance case, and it was agreed by counsel that a transcript of the evidence might be read to the jury, subject to the objection of counsel for appellant to its admission on the ground of incompetency. While this testimony was being read to the jury, no objection was made to any specific part thereof, and it therefore follows that appellant is not now in a position to complain of its admission. The appellant's objection simply challenged the competency and relevancy of the testimony as a whole, and he cannot be permitted in this court to avail himself of objections which should have been interposed in the court below. Moreover, it is evident that a part, if not all, of appellant's testimony was not only competent and material, but relevant to the issue then in question; and, that being so, a general objection was insufficient.

In charging the jury the learned judge submitted the materiality of the alleged false testimony to the jury. We are fully convinced that the testimony alleged in the information to be false was material; and, according to the weight of authority, it was the province of the court to charge the jury, as matter of law, that it was material. But, inasmuch as the jury, by their verdict, found, in effect, that the testimony was material, the error in submitting the question to them in no way prejudiced the rights of the appellant.

"If the court had charged that it was material, the jury would have been bound to have followed such instruction and found accordingly. Without such instruction, they have thus found. The result is the same, either way. How then has the defendant been prejudiced?" *State v. Lewis*, 10 Kan. 157.

See, also, *Montgomery v. State,* 40 S. W. 805; *Thompson v. People, supra.*

The appellant also complains of the following portion of the court's charge to the jury:

"In order to convict the defendant, the jury must be satisfied beyond a reasonable doubt: First, That the action was pending in this court wherein the State of Washington was prosecuting A. P. Vance upon an issue joined therein on the charge of murder in the first degree. Second, That this defendant upon the trial of said cause was sworn as a witness in said cause before Samuel Walker, who was then and there deputy clerk of said superior court, that the evidence which he, the said Manuel Douette, would give to the court and jury in the issue joined in said cause between the State of Washington and said A. P. Vance should be the truth, the whole truth, and nothing but the truth, and that he, the said Samuel Walker, as such deputy clerk as aforesaid, then and there had authority and power to administer the said oath to said Manuel Douette, and that the oath was taken by said Manuel Douette before giving his alleged testimony, if you find he did so testify in said cause. Third, That after having been first sworn as a witness in said cause he did testify to the statements or testimony contained in the information. It is not necessary, however, that they should be proved in the precise words alleged in the information; it is sufficient if they are substantially proven in language and effect as therein alleged. Fourth, That the statements so testified to by the said Manuel Douette, if you find he did so testify, were false and untrue, and that the defendant, Manuel Douette, at the time he gave such testimony wilfully gave the same, knowing the same to be false and untrue."

The objection to the first subdivision of this instruction is that there was nothing in the evidence upon which to base it, and to the third that the court therein, in effect, told the jury that the defendant was guilty if the facts alleged in the information were proven, and thereby in-

vaded the province of the jury. These objections, we think, are quite unsubstantial. Nor was the appellant, in our judgment, prejudiced in the least degree by the failure of the court to define the crime of perjury in the statutory language. The court told the jury what was necessary for them to find beyond a reasonable doubt in order to convict the appellant, and in so doing pointed out all the essential elements of the crime.

We have carefully considered all of the alleged errors, and have failed to discover anything in the record which would justify a reversal of the judgment, and it is therefore affirmed.

FULLERTON, MOUNT, DUNBAR and HADLEY, JJ., concur.